# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO.: 3:03CV12

| | |
|---|---|
| DIRECTV, INC., )<br> )<br>  Plaintiff, )<br> )<br>vs. )<br> )<br>WILLIAM DOZIER, )<br> )<br>  Defendant. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Default Judgment Against Defendant William Dozier, and for Certification of Final Judgment," "Plaintiff's Memorandum of Law In Support of Its Motion for Entry of Default Judgment Against Defendant William Dozier," "Affidavit of Leslie C. O'Toole in Support of Default," "Affidavit of Patricia Kerner in Support of Default," and "Affidavit of Robert A. Swofford, in Support of Default Judgment Against Defendant William Dozier," all filed December 20, 2004. (Documents ## 33-37). Defendant William Dozier ("Defendant") did not respond nor has he otherwise appeared in this matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Directv, Inc. ("Directv") is a direct broadcast satellite provider. (Compl. ¶ 2). Directv's Satellite Programming is received by Directv subscribers through the use of a fixed outdoor satellite dish, which is connected by cable to an indoor satellite receiver. (*Id.*). An individual cannot receive Directv's signal without paying a subscription fee. (*Id.* ¶ 3). In order to prevent the unauthorized receipt and use of its Satellite Programming, Directv uses encryption technology to scramble the signal, thereby making the signal unusable until it is unscrambled. (*Id.*). Once a

1

Directv customer pays a subscription fee, the satellite signal is unscrambled and the customer can receive Directv's Satellite Programming. (*Id.* ¶ 4).

Despite the encryption technology used by Directv, individuals have created devices and equipment (collectively referred to as "Pirate Access Devices") to surreptitiously pirate Directv's signal without paying Directv's subscription fee. ( *Id.* ¶ 5). Consequently, Directv has attempted to stop the sale and distribution of these Pirate Access Devices by executing writs of seizure on businesses that sell these Devices and then bringing lawsuits, such as this one, against the individuals who purchased and allegedly used and/or distributed Pirate Access Devices. This case is just one out of over one hundred that have been filed in this Court.

In this case, on May 25, 2001, Directv executed Writs of Seizure at a mail shipping facility used by various entities, including Vector Technologies, DSS-Stuff, DSSPro, DSS-Hangout, White Viper Technologies, Meadco, Intertek, Shutt, Inc., and Canadian Security and Technology. (*Id.* ¶ 7). As a result of the business records obtained through the Writs of Seizure, Directv learned that Defendant purchased one Pirate Access Device. (*Id.* ¶ 15). Specifically, he purchased a Device from White Viper, invoiced as "(Combo) Viper Reader/Writer & White Viper Unlooper." (*Id.*). As a result, on January 9, 2003, Directv filed a Complaint, alleging the following causes of action against Defendant: (1) violations of the Cable Communications Policy Act, pursuant to 47 U.S.C. § 605(a); (2) violations of 18 U.S.C. § 2511; (3) possession, manufacture, and/or assembly of electronic, mechanical or other device or equipment, pursuant to 18 U.S.C. § 2512; (4) willful assembly or modification of devices or equipment, in violation of 47 U.S.C. § 605(e)(4); (5) theft of telecommunication service, in violation of N.C. Gen. Stat. § 14-113.5; (6) interception and disclosure of electronic communications, pursuant to N.C. Gen. Stat.

§ 15A-287; (7) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and (8) civil conversion. Directv seeks injunctive relief, statutory damages or actual damages, punitive damages, and reasonable attorneys' fees and costs. On May 8, 2003, Directv served the Summons and Complaint on Defendant.

On July 10, 2003, in light of the fact that Defendant had not answered the Complaint or otherwise appeared in this matter, Directv filed a Motion for Entry of Default and on July 11, 2003, the Clerk entered default against Defendant. Directv now seeks to have default judgment entered against Defendant. Directv further asks the Court to award statutory damages of $10,000 for Defendant's violation of 47 U.S.C. §§ 605(e)(3)(C), 605(e)(3)(B), 18 U.S.C. § 2511, and 18 U.S.C. § 2520(c)(B)(2)(b), as well as attorneys' fees and costs in the amount of $997.46. (Pl. Mem. In Supp. p. 1). Directv also asks the Court to "permanently enjoin Defendant, Defendant's employees, agents, servants, successors and assigns, and any other person acting in concert with any of them, from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511." (*Id.* p. 6).

## II. DISCUSSION

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and after the clerk has entered default against such party, the opposing party is entitled to move for default judgment. *See* FED. R. CIV. P. 55. Moreover, "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." FED. R. CIV. P. 8(d). However, "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co.*

*Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

A.  **Violation of 18 U.S.C. § 2511**

   1.  **Statutory damages**

Section 2511 of the Wiretapping Act prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Section 2520, which is also part of the Wiretapping Act, provides the civil damages remedy for violations of 18 U.S.C. § 2511. Section 2520(a) provides, in relevant part, as follows:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which is engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

As noted above, upon entry of default the allegations in the complaint, except those relating to damages, are taken as true. Since default has been entered against Defendant, the Court takes as true the allegation that Defendant purchased one "(Combo) Viper Reader/Writer & White Viper Unlooper" and "intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from Directv." (Compl. ¶¶ 15, 28). Directv has, therefore, established a valid claim under Section 2511 and is entitled to default judgment on this claim.

Having concluded that default judgment is warranted on this claim, the Court must now turn to the issue of damages. Damages for violations of Section 2511 are provided for by Sections 2520(b)(2) and (c)(2), which provide:

> **(b)** In an action under this section, appropriate relief *includes*: . . . (2) damages under subsection (c) and punitive damages in appropriate cases . . .
>
> **(c)(2)** In any other action under this section, the court *may* assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each violation or $100,000.

18 U.S.C. §§ 2520(b)(2), (c)(2) (emphasis added).

The language of this statute has led various courts, including the Fourth Circuit, to conclude that an award of damages is permissive, as opposed to mandatory. *See Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) (concluding that the use of the word "may" indicates that "Congress intended to confer upon district courts the discretion to decline to award damages in applying § 2520(c)(2)"); *see also Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999) (noting that the plain language of Section 2520 gives district courts the discretion to decline to impose damages); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996) (affirming district court's finding that damages under the wiretapping statute are discretionary, as evidenced by the use of the word "may"); *Directv v. Brown*, 371 F.3d 814, 818-19 (11th Cir. 2004) (agreeing with the Fourth, Sixth, and Eighth Circuits that the use of the word "may" in Section 2520(c)(2) means that an award of damages under this statute is discretionary). Therefore, even if there has been a violation of Section 2511, the Court may, in its discretion, refuse to award any damages under Section 2520(c)(2).

In determining whether to award such damages

> . . . a district court should make an individualized assessment of each defendant. Factors that may be considered include whether the plaintiff suffered financial harm, the extent to which a violation occurred and unlawfully intercepted signals were disclosed, whether the defendant had a legitimate reason for his or her

actions, whether the defendant profited from his or her acts, and whether an award of damages would serve a legitimate purpose.

*Directv, Inc. v. Guzi*, 308 F. Supp. 2d 788, 790 (E.D. Mi. 2004); *see also Nalley*, 53 F.3d at 653-54 (denying an award of damages to plaintiff pursuant to 18 U.S.C. § 2520(c)(2) after considering whether plaintiff suffered financial loss and whether defendant received a profit).

In exercising this discretion in the instant case, the Court concludes that damages are not appropriate. Directv has not offered any evidence about the financial harm it suffered as a result of Defendant's actions. Aside from potentially receiving Directv's satellite television programming for free of charge for a period of time, there is no indication that Defendant otherwise profited from his conduct. There is no evidence that he used the device for commercial purposes or purchased the device for resale. There are no allegations that Defendant induced others to commit similar violations. Although Directv alleges that "[t]he value of the programs that Defendant[ ] was *capable of viewing* without authorization may easily reach $100,000 in a single year,"[1] there is no allegation as to how long Defendant actually used the device or the dollar amount Directv would have received in subscription fees but did not obtain as a result of Defendant's activity. There is no evidence of the amount of Defendant's actual personal use of the device. Therefore, the Court denies Directv's request for statutory damages arising from Defendant's violation of Section 2511.

### 2. Attorneys' fees and costs

While an award of statutory damages may serve the legitimate and useful purpose of deterrence, the Court finds that this purpose can be met by an award of costs and attorneys' fees.

---

[1] Compl. ¶ 19 (emphasis added).

Section 2520 allows a court to award "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. §§ 2520(b)(3).

Although the Court finds that Directv is not entitled to damages for a violation of § 2511, the Court will order Defendant to pay reasonable attorneys' fees and costs to Directv. Directv submitted the Affidavits of Leslie O'Toole, Patricia Kerner, and Robert A. Swofford to prove the attorneys' fees and costs incurred in this matter. These Affidavits state that Directv has incurred legal fees in an amount of $779.96 and costs in the amount of $217.50. A review of previous default judgments and corresponding affidavits filed by Directv lead this Court to conclude that the requested legal fees and costs are excessive. The Court finds that although the requested fees and costs are excessive, the Court will award Directv attorneys' fees in the amount of $189.46 and costs in the amount of $127.50.[2]

**B.      Violation of 47 U.S.C. § 605(e)(4)**

---

[2] After a review of the <u>numerous</u> motions for default judgment filed by Directv, the Court concludes that in this case, Directv is entitled to $127.50 in costs ($90 for the service fee and $37.50 for Defendant Dozier's *pro rata* share of the filing fee) and $189.46 in attorneys' fees. The Court's award of $189.46 in attorneys' fees is based on past filings by Directv and its allegations regarding the time it generally takes a paralegal and attorney to prepare the summons and complaint, draft the motion for entry of default, and draft the motion for default judgment. In light of the numerous filings of such complaints and motions and the almost identical language in those documents, the Court finds it difficult to believe that substantial time is spent by Directv in drafting its complaints, motions for entry of default, and motion for default judgment. Additionally, in the majority of Affidavits of Patricia Kerner filed with this Court, Ms. Kerner has averred that the firm of Ellis & Winters, LLP charged a flat rate of $25 to draft the complaint. In this case, however, Ms. Kerner states that Ellis & Winters, LLP charged a flat fee of $275 for preparation of the Complaint. The Court finds that a flat fee of $275 is excessive, especially in light of the fact that Plaintiff does nothing more than change the name of the defendant(s) and the list of devices allegedly purchased by such defendant(s) in each complaint. Moreover, the Court notes that with every motion for default judgment filed by Directv, Plaintiff includes an affidavit by either Felix Chevalier or Robert Swofford, both of whom work with the law firm of Greer, Herz & Adams, L.L.P. In <u>every</u> affidavit by Mr. Chevalier and Mr. Swofford that this Court has seen, they contend that Directv has "incurred and been billed at least $36.96 in attorney's fees . . . [and] Directv has incurred an additional $60.00 which has not been billed." No further explanation is given as to how those amounts were determined, such as the per hour rate of the attorney reviewing the file. Consequently, in this case the Court concludes that Directv is entitled to $189.46 in attorneys' fees, calculated as $25 to review the Complaint, $42.50 for time spent by an attorney preparing the motion for entry of default, $85.00 for time spent by an attorney preparing the Motion for Default Judgment, and $36.96 for attorneys' fees incurred by Greer, Herz & Adams, L.L.P.

In its Complaint, Directv alleges that Defendant violated both 47 U.S.C. § 605(a) and 47 U.S.C. § 605(e)(4). Notably, however, in its Motion for Default Judgment, Directv only seeks to recover for Defendant's violation of Section 605(e)(4). (Pl. Mem. In Supp. pp. 1, 3-4). Section 605(e)(4) provides as follows:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4). Any person aggrieved by a violation of Section 605(e)(4) may bring a private civil action against the violator and seek damages under Section 605(e)(3)(C). *See* 47 U.S.C. § 605(e)(3)(C).

Although the Defendant, by his default, admits Directv's well-plead allegations of fact, "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu*, 515 F.2d at 1206). Consequently, the Court must determine whether the allegations in Directv's Complaint support the relief sought in this action. *Id.* (citations omitted). In the instant case, Directv alleged in its Complaint that: (1) Defendant purchased one Pirate Access Device from White Viper, invoiced as "(Combo) Viper Reader/Writer & White Viper Unlooper;" and (2) "by removing and inserting a Pirate Access Device and/or inserting an illegally programmed Access Card into a valid Directv Receiver, Defendant[ ] engaged in the unlawful assembly and/or modification of devices primarily

8

of assistance in the unauthorized decryption of Satellite Programming." (Compl. ¶¶ 15, 36).

Numerous courts have found, and this Court agrees, that Section 605(e)(4) targets "upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Directv v. Borich*, No. Civ. A. 1:03-2146, 2004 WL 2359414 (S.D. W. Va. Sept. 17, 2004) (noting that the act of installing and activating a pirate access device does not convert an individual into a manufacturer or distributor of such device as contemplated by Section 605(e)(4)); *see also Directv v. Albright*, No. Civ. A. 03-4603, 2003 WL 22956416 (E.D. Pa. Dec. 9, 2003) (finding that a "reasonable reading of this provision demonstrates that § 605(e)(4) targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices"); *Directv v. McDougall*, No. Civ. A.SA-03-CA-1165, 2004 WL 2580769 (W.D. Tx. Nov. 12, 2004) (same); *Directv v. Robson*, 333 F. Sup. 2d 589, 595 (W.D. La. 2004) (stating that section 605(e)(4) is a provision relating to manufacturers and sellers, rather than individual users); and *Directv v. Hussain*, No. Civ. A.03-6482, 2004 WL 1125937 (E.D. Pa. May 20, 2004) (finding that Section 605(e)(4) relates to manufacturers and sellers, rather than users).

Moreover, even if Section 605(e)(4) were to apply to the individual consumer, this provision does not prohibit the mere purchase and use of a Pirate Access Device. *See* 47 U.S.C. § 605(e)(4) (prohibiting the manufacture, assembly, modification, importation, exportation, selling or distribution of such devices). Furthermore, the Court does not find that merely inserting and removing a Pirate Access Device and/or inserting illegally programmed Access Cards into a valid Directv Receiver is the type of modification or assembly prohibited by Section 605(e)(4). *See Directv v. Borich*, No. Civ. A. 1:03-2146, 2004 WL 2359414 (S.D. W. Va. Sept. 17, 2004) (noting that the act of "removing and inserting Pirate Access Devices and/or inserting illegally

programmed Access Cards into valid Directv Receivers is not the type of assembly or modification prohibited by the statute").

In the instant case, Directv's Complaint does not allege that Defendant is an upstream manufacturer or distributor, nor did Directv sufficiently establish that Defendant manufactured, assembled, modified, imported, exported, sold, or distributed Pirate Access Devices. Accordingly, default judgment is not appropriate on Directv's Section 605(e)(4) claim.

**C.     Abandonment of Claims**

As noted above, in addition to its 47 U.S.C. § 605(e)(4) and 18 U.S.C. § 2511 claims, Directv asserted claims against Defendant for: (1) violations of the Cable Communications Policy Act, pursuant to 47 U.S.C. § 605(a); (2) possession, manufacture, and/or assembly of electronic, mechanical or other device or equipment, pursuant to 18 U.S.C. § 2512; (3) theft of telecommunication service, in violation of N.C. Gen. Stat. § 14-113.5; (4) interception and disclosure of electronic communications, pursuant to N.C. Gen. Stat. § 15A-287; (5) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and (6) civil conversion. Directv did not seek default judgment with regard to those claims. Consequently, the Court finds that those claims should be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.

### III.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Default Judgment is hereby **GRANTED** with regard to its claim under 18 U.S.C. § 2511 and Plaintiff is awarded attorneys' fees in the amount of $189.46 and costs in the amount of $127.50.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment is hereby

**DENIED** with respect to its claim under 47 U.S.C. § 605(e)(4).

**IT IS FURTHER ORDERED** that in light of Plaintiff's failure to pursue the remainder of its claims against Defendant, those claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant is permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or committing or assisting in committing any violation of 18 U.S.C. § 2511.

**IT IS FURTHER ORDERED** that the entry of final judgment as to all claims against Defendant is appropriate at this time pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and there is no just reason for delay.

**Signed: October 19, 2005**

*(signature)*

Richard L. Voorhees
United States District Judge